UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 86-CR-322-RAR

UNITED STATES OF AMERICA,

v.

RICHARD JOSEPH,

Defendant.

_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR RECOMMENDATION AND DENYING REDUCTION OF SENTENCE

**THIS CAUSE** comes before the Court upon *pro se* Defendant Richard Joseph's Renewed

Motion for Recommendation to Home Confinement and Motion for Re-Sentencing [ECF No. 812]

("Motion"), filed on November 4, 2020. Joseph seeks "this Court's recommendation to designate

the balance of his sentence to be served through home confinement . . . [and] also moves this Court

to resentence him . . . pursuant to 18 U.S.C. section 3582(c)(1)(A), such re-sentencing to be to

time served and 60 months of home confinement." Mot. ¶ 6. Having considered the Motion, the

Government's Response in Opposition ("Response") [ECF No. 815], the medical records

submitted by the Government [ECF No. 817-1], Joseph's Notice of Filing Article [ECF No. 819],

Joseph's Supplement to his Motion [ECF No. 820], and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant Richard Joseph's Motion [ECF No. 812]

is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

## BACKGROUND

This case goes back to May 15, 1986, when Defendant Richard Joseph was charged with

various narcotics offenses involving the distribution of heroin as part of a thirty-three count, ten

co-defendant superseding indictment returned by a federal grand jury in the Southern District of

Florida.  *See* [ECF No. 766] (paper docket for Case No. 86-CR-322).  Specifically, Joseph was charged with the following: engaging in a continuing criminal enterprise with others in which he was an organizer and manager in violation of 21 U.S.C. section 848 (Count 1); conspiracy to possess with intent to distribute more than one hundred grams of heroin, in violation of 21 U.S.C. section 846 (Count 2); conspiracy to possess with intent to distribute more than one kilogram of cocaine, in violation of 21 U.S.C. section 846 (Count 3); possession and distribution of heroin, in violation of 21 U.S.C. section 841(a)(1) (Counts 10-13; 20-25; 28-32); and using a telephone to facilitate the cocaine conspiracy in violation of 21 U.S.C. section 843(b) (Counts 26-27).  [ECF Nos. 59; 766].  On November 18, 1986, Joseph was convicted by a jury on sixteen counts of the indictment: Counts 1-3, 10-11, and 20-31.  [ECF Nos. 389; 766].  The jury did not reach a verdict as to Counts 12, 13, and 32.  *Id.*

On January 15, 1987, Joseph was sentenced to 50 years' imprisonment as to Count 1; 15 years' imprisonment as to Counts 10, 20, 22, and 28, to run consecutively to one another and to the sentence imposed on Count 1; 20 years' imprisonment as to Counts 24 and 30, to run consecutively to one another and to the sentences imposed on Counts 10, 22, 22, and 28; 15 years' imprisonment as to Counts 11, 21, 23, and 29, to run concurrently to one another and to the sentence imposed on Count 1; 15 years' imprisonment as to Counts 25 and 31, to run concurrently to one another and to the sentence imposed on Count 1; and 4 years' imprisonment as to each of Counts 26 and 27, to run concurrently to Count 1. [ECF Nos. 477; 766].  The resulting sentence totaled 150 years' imprisonment, and the Eleventh Circuit Court of Appeals affirmed the sentence on direct appeal.[1]  Pursuant to 18 U.S.C. section 4205(b)(1), the district court further ordered that Joseph not become eligible for parole until after 40 years' incarceration.

---

[1]  Joseph filed a motion to vacate under 28 U.S.C. section 2255, which was denied [ECF No. 695], and the Eleventh Circuit affirmed.  *See Joseph v. United States*, 65 F.3d 180 (11th Cir. 1995).  Joseph also filed

Joseph is currently housed at the Federal Correctional Institution Coleman Medium ("FCI Coleman") where he has been designated to serve his term of imprisonment.  He requested both compassionate release and a designation to home confinement in a letter to the Warden of FCI Coleman on April 2, 2020.  *See* [ECF No. 798-2].   As set forth in the Warden's response on May 12, 2020, said request for compassionate release/reduction in sentence was denied given a review of his medical documentation and the conditions at FCI Coleman regarding the spread of COVID-19.  *See* [ECF No. 798-3].  Specifically, the Warden noted the following:

> A review of your medical documentation reflects you are diagnosed with anemia, thrombocytopenia and pre-diabetes.  You are not prescribed any medications.  Your condition is stable, you are not terminal, and your life expectancy is normal for your age.  You are not completely disabled and totally confined to a bed or chair.  You are able to independently attend to your activities of daily living and your medical condition does not affect your ability to function in a correctional setting.
>
> Additionally, the BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates.  We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus.  However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

*Id.*  On June 2, 2020, he filed a Motion for Recommendation by the Court for Re-Designation to Home Confinement for the Remainder of his Sentence ("Motion for Recommendation") [ECF No. 798].  In support of his Motion for Recommendation, Joseph cited generally to concerns raised by the COVID-19 pandemic; the fact his conviction was not "violent, a sex crime, or terrorism;" noted he "has had only one disciplinary record in the last eight years;" and argued that his medical history places him at higher risk of contracting COVID-19.  *See* Mot. for Recommendation at 10-17.

---

two motions for correction of illegal sentence under Fed. R. Crim. P. 35(a), which were also denied and subsequently affirmed by the Eleventh Circuit.  *See* [ECF Nos. 730; 734; 741; 750]; *see also United States v. Joseph*, 205 F. App'x 765 (11th Cir. 2006).

Upon carefully considering the Motion for Recommendation and conducting a hearing [ECF No. 810], the Honorable Federico A. Moreno, United States District Court Judge, granted the Motion for Recommendation and made a recommendation to BOP that Joseph serve the remainder of his sentence in home confinement. *See* Order Granting Mot. for Recommendation [ECF No. 811]. In doing so, however, Judge Moreno specifically noted that "the Court's recommendation to BOP would be non-binding and that BOP retains ultimate authority in deciding where inmates are designated for purpose of serving their term of incarceration." *Id.* Joseph now moves, once again, for a recommendation to home confinement, contending that the Warden rejected the Court's recommendation. Alternatively, Joseph moves under section 3582(c)(1)(A) for re-sentencing, relying on the "unfairness of the 150-year sentence imposed" and "the risk of COVID-19." Mot. ¶ 6. He also notes he has served approximately 35 years of his sentence. *Id.*

## ANALYSIS

As an initial matter, the Court sees no reason to disturb the ruling made by Judge Moreno in his prior Order Granting Motion for Recommendation. Indeed, the Court agrees to recommend that Joseph serve the remainder of his sentence in home confinement—but emphasizes, again, that such a recommendation is non-binding. The BOP continues to retain ultimate authority in deciding where inmates are designated for purposes of serving their term of incarceration. *See* 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment[.]"). And given the careful analysis employed by the BOP in reviewing Joseph's case as noted above, *see* [ECF No. 798-3], the Court has confidence that the BOP is in the best position to determine whether a recommendation to home confinement is warranted in this case. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can *recommend* that the BOP place an offender in a

particular facility or program . . . [b]ut decision making authority rests with the BOP.") (emphasis in original).

That being said, Joseph has alternatively requested, "[i]n an abundance of caution," that the Court re-sentence him pursuant to section 3582(c)(1)(A).  Mot. ¶ 6.  "A district court may modify a sentence only if the modification is authorized by a statute or a rule."  *United States v. Monaco*, 832 F. App'x 626, 628 (11th Cir. 2020) (citing *United States v. Puentes*, 803 F. 3d 597, 605-06 (11th Cir. 2015)).  The First Step Act amended section 3582(c)(1)(A) to permit a defendant to seek compassionate release after exhausting administrative remedies within the Bureau of Prisons ("BOP").  *See* First Step Act of 2018, § 603(b).[2]  To grant a motion for compassionate release, a court must consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable" and must make a finding that the defendant is not a danger to the safety of any other person in the community.  U.S.S.G. § 1B1.13.  In addition, the Court must find "extraordinary and compelling circumstances," and in doing so, must fashion a reduction in sentence that is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Milner*, 461 F. Supp. 3d 1328, 1331 (M.D. Ga. 2020) (explaining that section 3582(c)(1)(A) "sets out two requirements for a defendant to be entitled to relief: exhaustion of administrative remedies and extraordinary and compelling reasons warranting a sentence reduction.").

Despite Defendant's exhaustion of administrative remedies under section 3582(c)(1)(A), he fails to present "extraordinary and compelling reasons" to warrant compassionate release "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

---

[2]  As a preliminary matter, the Court finds—and the Government agrees—that Defendant has satisfied § 3582's exhaustion requirement because more than 30 days elapsed from the time Joseph filed his motion for compassionate release with BOP on April 2, 2020 until he filed the instant Motion on November 4, 2020.  *See* Resp. at 9 n.5.

§ 3582(c)(1)(A).   The Sentencing Commission promulgated its policy statement regarding

"extraordinary and compelling circumstances" in U.S.S.G. § 1B1.13.  The application notes to

§ 1B1.13 list four circumstances as extraordinary and compelling under § 3582(c)(1)(A): (A) a

serious medical condition; (B) advanced age and deteriorating health; (C) family circumstances;

and (D) an extraordinary and compelling reason other than, or in combination with, (A)-(C), as

determined by the Director of the BOP.  U.S.S.G. § 1B1.13, cmt. n.1.

To qualify as "extraordinary and compelling," an inmate's medical condition must be, in

relevant part, "serious and advanced . . . with an end of life trajectory" or serious enough that it

"substantially diminishes the ability of the defendant to provide self-care within the environment

of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13,

cmt. n.1.  "A compassionate release due to a medical condition is an extraordinary and rare event."

*United States v. Rodriguez-Orejuela*, 457 F. Supp. 3d 1275, 1282 (S.D. Fla. 2020) (internal

quotation and alteration omitted).  "In seeking a reduced sentence under this framework, the

defendant bears the burden of establishing that compassionate release is warranted."  *Id.* (internal

quotation omitted).

Here, Joseph argues that he has "had substantial surgeries (knees, shoulders, hip) since

being confined" and "is anemic, pre-diabetic and has survived prostate cancer."  Mot. ¶ 4.  In

support of this assertion, he references nine pages of medical records attached to his prior Motion

for Reconsideration.  *Id.*; *see* [ECF No. 798-8].  While Joseph's records do support a history of

prostate cancer, records indicate that the condition—diagnosed in 2009—has been "resolved."

[ECF No. 798-8] at 4.  Further, as evidenced by medical records submitted by the Government,

Joseph had a "completely normal colonoscopy in 2012."  [ECF No. 817-1].  Notably, Joseph has

not been prescribed any medication for his resolved prostate cancer and regularly receives a fecal

occult blood test, which is responsible for sampling Joseph's stool to check for blood, which can be indicative of cancer. *Id.* Similarly, Joseph has failed to show that his prior surgeries or current conditions of anemia and pre-diabetes warrant compassionate release.

Thus, Joseph has not advanced medical records or evidence demonstrating that he has a terminal illness or urgent medical condition warranting compassionate release under section 3582(c)(1)(A)(i). And after reviewing medical records filed by the Government, the Court is not convinced that his medical conditions rise to the level of extraordinary and compelling. *See, e.g, United States v. Thomas*, No. 9:10-cr-423-T-33AAS, 2020 WL 5407711, at \*3 (M.D. Fla. Sept. 9, 2020) ("Although the Court is sympathetic to [Defendant's] numerous underlying health conditions, including diabetes, high-blood pressure, and cardiovascular problems, . . . he has not sufficiently demonstrated that he has a serious medical condition that substantially diminishes his ability to care for himself in his facility."); *United States v. Saxon*, No. CR 112-119, 2020 WL 2617131, at \*2 (S.D. Ga. May 22, 2020) (denying compassionate release to defendant who suffered from congestive heart failure, high blood pressure, and bronchitis because defendant presented no medical evidence showing he met the criteria in U.S.S.G. § 1B1.13); *Rodriguez-Orejuela*, 457 F. Supp. 3d at 1282 (finding that defendant with heart problems and skin and colon cancer, among other conditions, had not established extraordinary and compelling reasons warranting compassionate release.).

Joseph cites the COVID-19 pandemic as an additional ground for compassionate release. *See* Supplement ¶ 3. However, he merely avers "uncontrolled and expanding COVID-19 infection rates going through the penal system" and notes than "several dozen inmates have been transferred, released or re-classified[.]" Supplement ¶ 3. While Defendant's concerns about the COVID-19 pandemic are understandable, the BOP has established numerous procedures to combat the spread

of COVID-19 within its facilities.  *See* Federal Bureau of Prisons, BOP Modified Operations,

*available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

Defendant does not explain why the specific mitigating measures BOP has put into effect at FCI

Coleman will be insufficient to protect him.  And as of this writing, FCI Coleman is reporting only

2 inmates (out of approximately 1,311) have COVID-19 infections.  *See* BOP COVID-19 Cases,

*available at* https://www.bop.gov/coronavirus/ (last accessed Feb. 9, 2020).

In sum, although the Court is mindful of the unprecedented magnitude of the COVID-19

pandemic and the serious health risks it presents, Joseph is not entitled to a modification of his

sentence based solely on generalized COVID-19 fears and speculation.  *See United States v.*

*Benitez*, No. 8:01-cr-283, 2021 WL 424346, at *4 (M.D. Fla. Feb. 8, 2021) ("This Circuit and

others have held that general concerns about possible exposure to COVID-19 do not alone meet

the criteria for an extraordinary and compelling reason under § 3582(c)(1)(A) and U.S.S.G. §

1B1.13, cmt. n. 1.") (collecting cases).  As the Third Circuit has noted, "the mere existence of

COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir.

2020).[3]

Lastly, "compassionate release is discretionary, not mandatory, and c[an] be refused after

weighing the sentencing factors of 18 U.S.C. [section] 3553(a)."  *United States v. Chambliss*, 948

---

[3] *See also, e.g.*, *United States v. Smith*, No. 17-CR-00412, 2020 WL 2512883, at *6 (M.D. Fla. May 15, 2020) ("[G]eneral concerns about possible exposure to COVID-19 do not meet the criteria for an extraordinary and compelling reason under U.S.S.G. § 1B1.13."); *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4-5 (M.D. La. Apr. 1, 2020) (denying compassionate release notwithstanding the defendant's high-risk status as a 67 year-old with a history of high blood pressure, high cholesterol, and sleep apnea); *United States v. Korn*, No. 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[I]n this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.") (emphasis in original).

F.3d 691, 693 (5th Cir. 2020) (alterations added); *see also Monaco*, 832 F. App'x at 628

(explaining that if there are "'extraordinary and compelling reasons' for compassionate release,

the district court has the discretion to reduce the defendant's term of imprisonment after

considering the applicable section 3553(a) factors."). Indeed, section 3582 requires that a court

contemplating a sentence reduction consider "the factors set forth in section 3553(a) to the extent

that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A) (alteration added). These factors include,

among others, the nature and circumstances of the offense and the history and characteristics of

the defendant, as well as the need for the sentence imposed to: (1) reflect the seriousness of the

offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford

adequate deterrence to criminal conduct; and (5) protect the public from further crimes of the

defendant. *See* 18 U.S.C. § 3553(a).

Here, the Court finds that the section 3553(a) factors greatly disfavor a sentence reduction.

First, the severity of Joseph's offense weighs against such a reduction. The record indicates that

the Government considered Joseph to be "the most culpable member" of a large-scale drug

distribution scheme, as he made significant managerial decisions regarding the distribution of

heroin and cocaine to various segments of south Florida and controlled the finances of the

organization for both future purchases and dispersal of profits. Pre-Sentence Investigation Report

("PSI") at 8. In fact, Joseph's organization was viewed by the Government to be the "single largest

heroin operation in [s]outh Florida" at the time. *Id*; *see, e.g.*, *United States v. Lika*, No. 84-CR-

499, 2020 WL 2766049, at *2 (S.D.N.Y. May 28, 2020) (noting that the section 3553(a) factors

"weigh[ed] strongly against release" because, *inter alia*, defendant "was the most culpable member

of a large-scale heroin importation scheme").

Defendant's personal history also weighs strongly against a reduction in Joseph's sentence. The record reflects that prior to Joseph's incarceration on the underlying offense, he was no novice to the criminal justice system, having been arrested thirteen times. PSI at 9-13. These arrests were marked by violence, firearms, and—significantly—the very same conduct as the underlying offense. *Id.* Joseph has been arrested for second degree murder, *id.* at 10; aggravated battery, *id.*; possession of a firearm by a convicted felon, *id.* at 11; conspiracy to distribute a controlled substance*, id.*; possession of cocaine, *id.* at 12; and trafficking in cocaine, *id.* at 13. This significant criminal history countenances against any potential reduction in sentence. *See, e.g.*, *United States v. English*, No. 2:19-CR-20164, 2021 WL 267774, at *3 (E.D. Mich. Jan. 27, 2021) (explaining that section 3553(a) factors weighed against release because "Defendant had been found guilty of a large-scale interstate distribution of drugs for which he was an organizer, leader, manager, or supervisor. And Defendant engaged in this serious criminal behavior after he completed a substantial sentence for a prior, similar drug-trafficking conviction.") (internal citations and quotations omitted); *United States v. Carr*, No. 14 Cr. 055, 2020 WL 1689771, at *3 (S.D.N.Y. Apr. 7, 2020) (finding that section 3553(a) factors did not support a reduction in sentence because "Defendant was one of the most culpable in the group of defendants charged" in the relevant drug distribution scheme, "[t]he instant offense was Defendant's sixth conviction following a long criminal record, and Defendant ha[d] been incarcerated at least twice in the past for selling drugs.").

Further, despite Joseph's present insistence of remorse, Joseph's misconduct during his incarceration indicates that he poses a significant risk of reoffending. His BOP disciplinary record reflects that he has been sanctioned for lying or falsifying a statement, [ECF No. 798-2] at 2; threatening bodily harm, *id.*; engaging in sexual acts, *id*.; using a phone or mail without

authorization, *id*.; and, most pertinent here, fighting with another inmate on three separate occasions—the most recent being in 2018, *id*. at 1.  This disciplinary history—which includes recent and repeated incidents of violence—demonstrates that Joseph remains a risk of reoffending and further weighs against a reduction in Joseph's sentence.  *See United States v. Razz*, --- F. App'x ----, 2020 WL 7351843, at *4 (11th Cir. 2020) (concluding that the "explanation of the court's decision was sufficient under our precedents" where the district court found that, *inter alia*, "[defendant]'s history as a lifelong criminal, . . . and the fact that [defendant's] prison disciplinary record was not spotless weighed against reducing either his term of imprisonment or his term of supervised release."); *see also, e.g.*, *United States v. Brunstorff*, No. 3:12-cr-00004, 2020 WL 6110961, at *4 (D. Conn. Oct. 16, 2020) ("I find that, when the Section 3553(a) factors—and especially his lengthy and violent criminal history and his recent disciplinary history at the BOP— are accounted for in this case, the risk to [defendant]'s health posed by COVID-19 does not move the needle to the 'extraordinary and compelling' level that would warrant ending his term of imprisonment.").

Ultimately, the Court imposed a sentence of 150 years imprisonment in this case—and made sure to order that Joseph not become eligible for parole until after 40 years' incarceration. Joseph has yet to meet even that threshold, having served approximately 35 years of his sentence. Thus, it is abundantly clear that any reduction of Joseph's sentence would fail to reflect the seriousness of his offenses, provide just punishment for said offenses, provide adequate specific or general deterrence, or protect the public from further crimes.  Consequently, the section 3553(a) factors simply do not favor a reduction of Joseph's sentence.  *See United States v. Sims*, 824 F. App'x 739, 745 (11th Cir. 2020) (affirming the denial of defendant's motion for a reduction in sentence and approving the district court's consideration under section 3553 of the defendant's

original sentence, the substantial quantity of drugs for which defendant was held responsible at sentencing, his prior criminal history, and his post-sentencing conduct); *United States v. Lopez-Ontiveros*, No.: 15-cr-575-GPC-1, 2020 WL 5909530, at *4 (S.D. Cal. Oct. 6, 2020) ("Reduction of [defendant's] sentence for a serious drug distribution offense in which he took a leadership role . . . would not reflect the seriousness of the offense.").

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Richard Joseph's Renewed Motion for Recommendation to Home Confinement and Motion for Re-Sentencing [ECF No. 812] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 11th day of February, 2021.

        **RODOLFO A. RUIZ II**
        **UNITED STATES DISTRICT JUDGE**