UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:86-cr-00322-RAR/Becerra

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RICHARD JOSEPH,

    Defendant.
_____/

**REPORT AND RECOMMENDATION[1] ON
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**THIS CAUSE** came before the Court on Defendant Richard Joseph's ("Mr. Joseph") Motion for Compassionate Release (the "Motion"). ECF No. [828]. The United States of America (the "Government") filed a Response to the Motion, ECF No. [835], and Mr. Joseph filed a Reply, ECF No. [838]. On March 7, 2022, the Parties appeared for a hearing on this matter. ECF No. [848]. Upon due consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Mr. Joseph's Motion, ECF No. [828], be **GRANTED**.

    **I.**    **THE UNDERLYING CRIMINAL CASE**

On May 15, 1986, a federal grand jury sitting in this District returned a thirty-three count Superseding Indictment, charging Mr. Joseph and his twelve co-defendants with various offenses relating to the distribution of controlled substances. ECF No. [59]. Specifically, Mr. Joseph was charged with: (1) continuing criminal enterprise in violation of 21 U.S.C. §§ 841(a)(1), 843(b),

---

[1] This matter was referred to the undersigned by the Honorable Rodolfo A. Ruiz, II, United States District Judge. ECF No. [830].

and 846 (Count One); (2) conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Three); (4) possession and distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Counts Ten through Thirteen, Twenty through Twenty-Five, and Twenty-Eight through Thirty-Two); and (3) using a telephone to facilitate the cocaine conspiracy in violation of 21 U.S.C. § 843(b) (Counts Twenty-Six through Twenty-Seven). *See id.* A jury found Mr. Joseph guilty of Counts One through Three, Ten, Eleven, and Twenty through Thirty-One. ECF No. [389].

On January 15, 1987, the District Court sentenced Mr. Joseph to 150 years' imprisonment and noted that he would not become eligible for parole until he had served at least forty years of his sentence. ECF No. [473] at 1–3. As of the date of this Report and Recommendation, Mr. Joseph, who was arrested on March 31, 1986 and has been in custody since, has served thirty-six years of his 150-year sentence. *See* ECF No. [828] ¶ 1.

## II.  PROCEDURAL HISTORY

On April 12, 2020, Mr. Joseph wrote a letter to the Warden, requesting compassionate release based on his medical conditions and COVID-19 concerns. ECF No. [798-2]. On May 12, 2020, the Warden denied Mr. Joseph's request, stating that his "anemia, thrombocytopenia and pre-diabetes" were not terminal and did not "affect [his] ability to function in a correctional setting." ECF No. [798-3] at 1. In addition, the Warden noted that Mr. Joseph's "concern about being potentially exposed to, or possibly contracting, COVID-19 [did] not [] warrant an early release from [his] sentence." *Id.*

On June 2, 2020, Mr. Joseph filed a Motion for Recommendation by the Court for Re-Designation to Home Confinement for the Remainder of His Sentence. ECF No. [798]. Mr.

Joseph argued that he should be re-designated to home confinement for the remainder of his sentence given the extraordinary circumstances surrounding COVID-19. *Id.* at 4–5. Mr. Joseph submitted that he met the criteria for home confinement because the offense for which he was incarcerated was not violent, he was a United States citizen with no immigration detainers, he had no incidents in his prison disciplinary record, he had a viable release plan, and he posed minimum risk. *Id.* at 10–12. Thus, Mr. Joseph requested that the Court recommend to the Bureau of Prisons that he be re-designated to home confinement. *Id.* at 16.

On September 11, 2020, the Honorable Federico A. Moreno, United States District Judge, granted Mr. Joseph's Motion for Recommendation. ECF No. [811]. The District Court noted that the "recommendation to BOP would be non-binding and that BOP retains ultimate authority in deciding where inmates are designated for purposes of serving their term of incarceration." *Id.* at 1. The Warden thereafter declined to re-designate Mr. Joseph. *See* ECF No. [828] ¶ 3.

On November 4, 2020, Mr. Joseph filed a *pro se* Renewed Motion for Recommendation. ECF No. [812]. Mr. Joseph stated that the Warden had rejected the District Court's recommendation for re-designation because he had not served at least fifty percent of his sentence. *Id.* at 1. Mr. Joseph argued that he should be re-designated to home confinement given his medical conditions. *Id.* In the alternative, Mr. Joseph requested that he be re-sentenced under 18 U.S.C. § 3582(c)(1)(A) because his co-defendants received significantly shorter sentences. *Id.* at 2.

On February 11, 2021, the Honorable Rodolfo A. Ruiz, United States District Judge, entered an Order Granting Mr. Joseph's Renewed Motion for Recommendation and Denying Reduction of Sentence. ECF No. [821]. The Court concluded that there was "no reason to disturb the ruling made by Judge Moreno in his prior Order Granting Motion for Recommendation," and agreed "to recommend that Joseph serve the remainder of his sentence in home confinement." *Id.*

at 4. The District Court noted, however, that its recommendation was non-binding because BOP was "in the best position to determine whether a recommendation to home confinement is warranted in this case." *Id.* (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)).

However, as to Mr. Joseph's request under 18 U.S.C. § 3582(c)(1)(A), the Court found that Mr. Joseph was not entitled to a reduction of his sentence because Mr. Joseph failed to demonstrate that he had an extraordinary and compelling medical condition, as set forth in Application Note 1(A) of Section 1B1.1 of the Sentencing Guidelines. *Id.* at 6. Specifically, the District Court concluded that Mr. Joseph was not suffering from a serious and advanced illness with an end-of-life trajectory that qualified as extraordinary and compelling based on his history of prostate cancer, anemia, pre-diabetes, and surgeries (knees, shoulder, and hips). *Id.* at 6–7. Moreover, the District Court concluded that Mr. Joseph's generalized concerns regarding COVID-19 were not sufficient to warrant sentence modification because "the BOP has established numerous procedures to combat the spread of COVID-19 within its facilities." *Id.* at 7–8. Finally, the District Court evaluated the 18 U.S.C. § 3553(a) factors and determined that they weighed against a reduction of Mr. Joseph's sentence because: (1) Mr. Joseph was the leader of a large-scale drug distribution scheme; (2) Mr. Joseph had an extensive criminal history prior to his incarceration for the instant offense; (3) Mr. Joseph had several instances of misconduct in prison; and (4) Mr. Joseph has served less than forty years of incarceration and the sentencing court ordered he would only become eligible for parole after forty years of incarceration. *Id.* at 8–12.

On April 28, 2021, Mr. Joseph filed a *pro se* Motion for Compassionate Release and Motion for Re-Designation to Home Confinement. ECF No. [822]. Therein, Mr. Joseph relied upon his medical history and COVID-19 concerns. *See id.* On May 15, 2021, the District Court entered a paperless order denying the Motion because Mr. Joseph sought the exact relief already

addressed by the Court in its February 11, 2021 Order Granting Defendant's Renewed Motion for Recommendation and Denying Reduction of Sentence. ECF No. [823].

On June 17, 2021, Mr. Joseph filed a *pro se* Motion for Reconsideration, again stating that he was entitled to compassionate release or re-designation to home confinement given his medical conditions and COVID-19 concerns. ECF No. [824]. On June 18, 2021, the District Court entered a paperless order denying the Motion for Reconsideration because it contained the same arguments already addressed by the Court. ECF No. [825].

### III.   THE INSTANT MOTION

#### A.   Mr. Joseph's Motion for Compassionate Release, Resentencing, and Request for Home Confinement.

On November 18, 2021, Mr. Joseph, now through counsel, filed the instant Motion for Compassionate Release. ECF No. [828]. This time, Mr. Joseph requests compassionate release and re-designation to home confinement under Section 3582(c)(1)(A), as set forth in Application Note 1(B) of Section 1B1.1 of the Sentencing Guidelines. *Id.* at 32–40.[2] Relief under Application Note 1(B) was not argued before, or considered by, Judge Moreno or Judge Ruiz in the previous motions. In short, Mr. Joseph submits that the instant Motion is solely premised on the fact that he is suffering from a serious, deteriorating medical condition because of the aging process. ECF No. [838] at 13–14.

Specifically, Mr. Joseph notes that he is now seventy-three years old, suffers from deteriorating medical conditions (including anemia, thrombocytopenia, prediabetes, bilateral low vision), has a history of leukopenia, prostate cancer, and atrial fibrillation, and is also overweight.

---

[2] In his Motion, Mr. Joseph also argued that COVID-19 presented an extraordinary and compelling reasons to justify compassionate release. ECF No. [828] at 5–26. However, at the hearing on this Motion, Mr. Joseph's counsel abandoned the argument that COVID-19 was a basis for relief.

*Id.* at 14–15. Mr. Joseph argues that the Section 3553(a) factors weigh in favor of compassionate release because: (1) while he is a repeat offender, his earlier offenses occurred forty years ago, and his time in prison has been marked with counseling and coursework designed for self-improvement, general education, and vocational training; (2) he "has been a model prisoner and poses no risk to any person or the community"; (3) he "has a low risk of recidivism, based on his Pattern Score"; (4) he has served a significant portion of his sentence, which sufficiently meets the sentence's purpose; and (5) [o]f all the persons involved in Mr. Joseph's enterprise, his sentence exceeds the next highest sentence by 135 years." *Id.* at 32–37 (emphasis omitted). Mr. Joseph submits that he has a viable plan to facilitate home confinement because "[h]e will live with his son, Trevin Joseph," whose "home has a bedroom with an attached bathroom that Mr. Joseph can use." *Id.* at 39. Mr. Joseph notes that this proposed home has been approved by the United States Probation Office, who visited the home on two occasions. *Id.* In addition, Mr. Joseph notes that another son, Dwayne Joseph, is the Director of Pro Personnel for the Las Vegas Raiders and will also assist by providing financial support. *Id.*

### B. The Government's Response In Opposition

The Government argues that Mr. Joseph has not met his burden under Section 3582(c)(1)(A) "in light of the danger that he would pose to the community and the relevant § 3553(a) factors." ECF No. [835] at 11. The Government argues that Mr. Joseph has failed to establish an extraordinary and compelling reason to justify compassionate release because: (1) his ailments are either resolved or well-managed; (2) his "medical records reflect that he exercises, receives appropriate medications accordingly, and regularly sees the medical center when needed"; and (3) he received his COVID-19 vaccine in August 2021. *Id.* at 13. In addition, the Government argues that Mr. Joseph continues to pose a danger to the community, was convicted of a serious

drug offense, was a repeat offender at the time of his incarceration and has been subject to disciplinary actions in prison with the latest incident occurring in 2018. *Id* at 14–15.

### C. Mr. Joseph's Reply

Mr. Joseph maintains that he is entitled to compassionate release given his deteriorating health as a result of the aging process. ECF No. [838] at 13–14. Specifically, Mr. Joseph argues that his "latest bloodwork report on August 3, 2021, shows that his white blood cell count is low," and that as a result, he is significantly immunocompromised. *Id.* at 16. Mr. Joseph submits that although he was incarcerated for a serious offense, he "has a low risk of recidivism, has been a model prisoner, and poses no risk to any person or the community as a whole." *Id.* at 10. To that effect, Mr. Joseph states that "strict home confinement serves as adequate punishment" because "[i]t reflects respect for the law while also allowing him to seek medical care for his medical issues." *Id.* at 11.

In support of the Reply, several of Mr. Joseph's eighteen children and extended family members submitted letters. *See* ECF No. [838-1]. First, Dwayne Joseph, who was thirteen years old and in the car with Mr. Joseph when he was arrested, states that he and his family "look forward to having [Mr. Joseph] spend his remaining years . . . in a stable home environment while using his testimony of bad choices as a young person to help other young men avoid the path he has taken." *Id.* at 2. Second, Jarrett J. Joseph, who was five years old when his father–Mr. Joseph– was arrested, recalls that experience as "extremely traumatic," but now at forty years old, is "willing and able to provide support and give [his father] the guidance and love he needs." *Id.* at 3. Third, another son, Jevon Joseph, states that he and his siblings are willing to provide Mr. Joseph financial and emotional support. *Id.* at 4. He further notes that Mr. Joseph is deserving of a second chance because he has accepted full responsibility for his actions and has sought to

improve his life by obtaining his G.E.D. and attending church regularly. *Id.* Fourth, Trevin Joseph, another son, states that his father "is filled with remorse, repentance, and regret for his actions and having left his family." *Id.* at 7. Fifth, Valerie Joseph, Mr. Joseph's daughter, states that it was difficult to grow up without her father to witness major milestones in her life but she is prepared to "embrace [Mr. Joseph] and help him acclimate to life outside prison." *Id.* at 9. Sixth, Zenzi Whitsett, Mr. Joseph's stepdaughter who was twelve when he was arrested, states that she and her family are praying for his release and are "[r]eady to encourage him and help him navigate this brand new world." *Id.* at 10. Seventh, Patricia Jewell Joseph, Mr. Joseph's ex-wife who was married to him at the time of his incarceration, states that Mr. Joseph will be able to impart his redeeming qualities "and the wisdom he's developed with his family and community" and that his entire family is "in his corner and ready to support him in being a good, productive citizen." *Id.* at 6. Eighth, Lakechia Joseph, Trevin Joseph's wife and Mr. Joseph's daughter-in-law, states that she calls him "dad" because he always provides "words of comfort, encouragement and even constructive criticism." *Id.* at 5. She further states that Mr. Joseph "will do great things upon his release" and that she "look[s] forward to limitless conversations and opportunities to spend time together as a family." *Id.* Finally, Treyvin Joseph, Mr. Joseph's ten-year-old grandson, states that he wishes his grandfather could come home because he loves him and misses him. *Id.* at 8.

### D. The New Evidence Presented At The Evidentiary Hearing

On March 7, 2022, the Parties appeared for a hearing on this matter. ECF No. [848]. First, Mr. Joseph called Amy Kossoff, M.D., a doctor of internal medicine. Dr. Kossoff testified that she reviewed Mr. Joseph's medical records and identified various serious, debilitating medical conditions, including a history of prostate cancer, atrial fibrillation and atrial flutter, severe osteoarthritis, and pancytopenia. As to the history of prostate cancer, Dr. Kossoff testified that

Mr. Joseph's most recent PSA test was normal but that there was no guarantee that his conditions would not worsen over time. As to the atrial fibrillation and atrial flutter, Dr. Kossoff testified that an individual could remain in atrial fibrillation for extended periods of time. Dr. Kossoff stated that there was no indication in the medical records as to the source and commencement of Mr. Joseph's condition or whether he remained in atrial fibrillation. Thus, Dr. Kossoff testified that the lack of records on this condition was concerning because if Mr. Joseph was not properly monitored, his heart condition could worsen over time. As to the osteoarthritis, Dr. Kossoff testified that Mr. Joseph's condition was extreme and severe because it encompassed five joints. Dr. Kossoff stated that, in her clinical experience, she has only seen individuals with osteoarthritis in up to three joints. Dr. Kossoff noted that the medication prescribed to Mr. Joseph for his osteoarthritis reflected that he was in significant pain.

However, Dr. Kossoff testified that Mr. Joseph's pancytopenia was the most concerning. Dr. Kossoff testified that all of Mr. Joseph's blood cells are in an abnormal range. Dr. Kossoff stated that Mr. Joseph's white blood cells were the most concerning because the last time they were tested, in August 2021, his neutrophils level was alarmingly low. Dr. Kossoff explained that neutrophils are a type of white blood cell responsible for fighting infections and that individuals with very low neutrophils levels are often placed in isolation. Although Dr. Kossoff stated that Mr. Joseph does not yet require isolation, she testified that Mr. Joseph's neutrophils level is incredibly low and that he would not fare well with any kind of infection. Dr. Kossoff testified that there was no treatment available for Mr. Joseph's blood cell condition. Dr. Kossoff stated that within the next few years Mr. Joseph's condition would inevitably develop into leukemia, and that his decline thereafter would occur extremely quickly. Dr. Kossoff, therefore, stated that Mr. Joseph's blood should be drawn every two months and that she was concerned that it was last

drawn in August 2021. Moreover, Dr. Kossoff testified that it was concerning that Mr. Joseph last had a bone marrow biopsy in December 2017 but has not had any follow up appointments since then and has not been referred to a hematologist for annual checkups despite his degenerative blood condition.

Second, Mr. Joseph called Wayne Tilman, a retired City of Miami Police Department Sergeant. Mr. Tilman testified that he met Mr. Joseph's son, Trevin Joseph, twenty-two years ago. Mr. Tilman testified that at that time, Trevin Joseph had been arrested for narcotics tracking and faced between twelve and fifteen years in prison. Mr. Tilman stated that Trevin Joseph entered into a cooperation agreement with law enforcement, and in exchange, served approximately six years in prison. Mr. Tilman testified that through Trevin Joseph's cooperation, he was able to effectuate the arrest of numerous individuals, as recent as 2020. Mr. Tilman testified that through the years, he has maintained a close relationship with Trevin Joseph and has witnessed Trevin Joseph transform himself into an upstanding member of the community. Mr. Tilman testified that he and Trevin Joseph have spoken on numerous occasions about his plan to welcome his father into a supportive home where he can serve the remainder of his sentence. Mr. Tilman stated that he is confident that Mr. Joseph would not re-offend should he be released to home confinement because he would be transported to a different community and because men of his age are not likely to be welcomed back into the criminal enterprises they once ran. Mr. Tilman further stated that he firmly believes in Trevin Joseph. Specifically, Mr. Tilman stated that although he has been approached many times about testifying on behalf of defendants, this is the first time he has ever committed to doing so.

Finally, Mr. Joseph called his son, Trevin Joseph. Trevin Joseph testified that he was thirteen years old when his father was incarcerated. Trevin Joseph stated that this was a pivotal

point in his life and that he would later follow in his father's footsteps when he was arrested on January 27, 2000, on a cocaine conspiracy charge. Trevin Joseph testified that his father was very supportive of his decision to enter into a cooperation agreement with the Government. Trevin Joseph explained that his father recognized that cooperation was an opportunity to have a second chance to turn his life around. Trevin Joseph testified that when he was released from prison, he moved out of the community where he grew up in Overtown, Miami. Trevin Joseph Trevin states that he moved to Georgia, where he now runs a franchise business. Trevin Joseph testified that he lives with his wife, an engineer with Lockheed Martin, and that they are prepared to welcome Mr. Joseph into their home.

## IV.   ANALYSIS

This case is now on its third round of briefing regarding Mr. Joseph's request to serve the remainder of his sentence in home confinement. Each round of briefing has presented different legal issues. As noted above, the first motion requested that the District Court recommend to BOP that Mr. Joseph be re-designated to home confinement in light of COVID-19. ECF No. [798]. That motion was granted by Judge Moreno. ECF No. [811]. When BOP rejected Judge Moreno's recommendation, Mr. Joseph filed a *pro se* Renewed Motion for Recommendation, requesting a renewed recommendation for re-designation to home confinement based on his COVID-19 concerns *and* requesting a reduction of his sentence under Section 3582(c)(1)(A). ECF No. [812]. That motion was granted in part and denied in part by Judge Ruiz, who determined that Judge Moreno's recommendation was to remain in place, but that Mr. Joseph was not entitled to a reduction of his sentence because he did not meet the criteria under Application Note 1(A) of Section 1B1.13 of the United States Sentencing Guidelines. Mr. Joseph now seeks compassionate

release under Application Note 1(B) of Section 1B1.13, a provision not previously considered by the District Court.[3]

### A. Under Application Note 1(B), Mr. Joseph Has A Deteriorating Medical Condition As A Result Of The Aging Process. [4]

As a general matter, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, Section 3582(c)(1)(A) sets forth a narrow exception if "extraordinary and compelling reasons warrant [] a reduction." *Id.* at § 3582(c)(1)(A)(i). The Sentencing Commission has promulgated a policy statement, which states that the four circumstances that qualify as "extraordinary and compelling" are: (A) the medical conditions of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) other reasons as determined by the BOP. U.S.S.G. § 1B1.13, cmt. 1. Under Application Note 1(B) regarding age, a defendant is required to prove that he "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* at cmt. 1(B).

There is no dispute that Mr. Joseph is at least sixty-five years old and has served at least ten years of his sentence. Thus, the only issue as to this provision is whether Mr. Joseph is

---

[3] Although the District Court previously denied compassionate release, "nothing in the text of 18 U.S.C. § 3582(c)(1)(A) or U.S.S.G. § 1B1.13 precludes a defendant, as a matter of law, from renewing a request for compassionate release and a district court from reweighing the circumstances to determine if a sentence reduction is warranted." *United States v. Jones*, No. 3:05-CR-001-HES-MCR, 2022 WL 62089, at *3 (M.D. Fla. Jan. 6, 2022). This is particularly true where, as here, the bases for each motion are different. *Id.* (noting that the defendant's first motion for compassionate release "focused on the dangers posed by the Covid-19 pandemic," but the second motion was based on the "'old age' provision" of Application Note 1(B)).

[4] Section 3582 provides that a defendant must exhaust all administrative remedies within the BOP before seeking compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Joseph has exhausted administrative remedies. ECF No. [835] at 9 n.5 ("The government agrees that Joseph has satisfied § 3582's exhaustion requirement . . . .").

experiencing a serious deterioration in his physical health because of the aging process. Although Mr. Joseph has now abandoned the argument that COVID-19 presents risks that warrants compassionate release, he maintains that his various medical conditions demonstrate that he is experiencing a serious deterioration of his physical health as a result of the aging process.

Specifically, at the hearing before the undersigned on the instant Motion, Dr. Kossouf testified that all of Mr. Joseph's conditions will undoubtedly cause his health to deteriorate as he gets older. Dr. Kossouf noted that the medical records reflect that Mr. Joseph has pancytopenia, which she found to be the most alarming condition. Dr. Kossouf testified that Mr. Joseph's white blood cell count is extremely low, and that as a result, it is only a matter of time before he develops leukemia. Dr. Kossouf stated that once Mr. Joseph develops leukemia, he will deteriorate very quickly. Dr. Kossouf testified that there is no treatment for Mr. Joseph's condition, but that his blood should be drawn regularly. Dr. Kossouf noted that Mr. Joseph's medical records demonstrate a sharp deterioration in his health because the August 2021 bloodwork was the first time his white blood cell level was alarmingly low. Therefore, Dr. Kossouf opined that Mr. Joseph's pancytopenia will only worsen with age. Dr. Kossouf expressed concern that Mr. Joseph's last bloodwork was in August 2021, which meant that BOP was not closely monitoring his pancytopenia as she would recommend given his condition and age.

Given the evidence now before the Court, including the new testimony from Dr. Kossouf, the Court finds that Mr. Joseph satisfies the requirements of Application Note 1(B) because he is experiencing a serious deterioration in his physical health given the aging process. Specifically, Mr. Joseph's medical records and Dr. Kossouf's testimony confirm that he is suffering from a life-threatening blood cell condition that will inevitably evolve into an aggressive form of leukemia. It appears that Mr. Joseph's pancytopenia arose or worsened last year because bloodwork prior to

August 2021 did not reflect such significantly low white blood cell levels. Thus, as Dr. Kossouf's testimony corroborates, Mr. Joseph's blood cell condition is rapidly evolving.

The Government's argument that Mr. Joseph's condition is currently stable is unpersuasive because "[h]is currently stable condition and fair prognosis, while noteworthy, do[es] not change the fact that the passage of time has rendered [Mr. Joseph] in a seriously degraded physical state" and that his medical condition will inevitably become more serious. *United States v. Rice*, No. 90-CR-00768, 2020 WL 4333527, at *5 (S.D. Fla. June 8, 2020) (granting compassionate release under Application Note 1(B) and re-designating to home confinement). Accordingly, the Court finds that Mr. Joseph has met his burden to establish that he has a serious, deteriorating health condition due to his age, and therefore, that extraordinary and compelling reasons justify compassionate release. *See, e.g.*, *United States v. Salemo*, No. 11-CR-65 (JSR), 2021 WL 4060354, at *4 (S.D.N.Y. Sept. 7, 2021) (concluding that a 77-year-old defendant was entitled to compassionate release because he had deteriorating medical conditions caused by aging, including "obesity, chronic obstructive pulmonary disorder (COPD), cataracts, and hypertension"); *United States v. Bush*, No. CR06-5504 BHS, 2021 WL 135869, at *3 (W.D. Wash. Jan. 14, 2021) (concluding that a 71-year-old defendant was entitled to compassionate release under Application Note 1(B) because "[h]is hypertension is uncontrolled, his kidney function is in serious decline, and he only has six teeth"); *United States v. Gluzman*, No. 7:96-CR-323 (LJL), 2020 WL 4233049, at *15 (S.D.N.Y. July 23, 2020) (concluding that the defendant could satisfy the criteria of Application Note 1(B) "if she developed a medical condition in her youth that worsened, because of the aging process, to the point where she was experiencing serious deterioration in physical or mental health.") (quotation marks omitted).

### B. Mr. Joseph Now Satisfies The Section 3142(g) And Section 3553(a) Factors.

Under the Sentencing Commission's policy statement, the Court must ensure that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) states that the Court must consider several factors, including: (1) "the nature and circumstances of the offense charged," such as whether it was a crime of violence or involved a controlled substance; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," such as the defendant's character and family ties; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4). Moreover, Section 3582(c)(1)(A) states that before granting compassionate release, the Court must consider the Section 3553(a) factors, which include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant"; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1)–(7). Because both Section 3142(g) and Section 3553(a) include overlapping considerations, the Court considers them together.

In its previous Order, the District Court evaluated the Section 3553(a) factors when it considered Mr. Joseph's *pro se* Renewed Motion, concluding that the factors disfavored a sentence reduction. *See* ECF No. [821] at 9. As to the underlying offense, the District Court noted that Mr.

Joseph was the most culpable member of a large-scale heroin importation scheme. *Id.* As to Mr. Joseph's criminal history, the District Court noted that he had been arrested multiple times, and that his BOP record reflected several sanctions for various offenses including fighting with another inmate in 2011 and 2018. *Id.* at 10–11 (citations omitted). Finally, the District Court noted that a reduction of Mr. Joseph's sentence would not provide adequate deterrence or protect the public from further crimes because the sentencing court ordered that Mr. Joseph would not become eligible for parole until he served at least forty years of his sentence. *Id.* at 11.

At this juncture, the task is not to reconsider the District Court's findings above but rather to determine whether the new evidence presented in support of the instant Motion changes the weight of those factors in Mr. Joseph's favor. Indeed, since the District Court's previous Order, Mr. Joseph has presented significant evidence regarding the extent and nature of the family support he would receive if he were placed in home confinement and of his serious health conditions, which materially impact the analysis on his characteristics and the likelihood that he would reoffend. The undersigned finds that the new evidence weighs in favor of granting the Motion and permitting Mr. Joseph to serve the remainder of his sentence in home confinement.

First, if placed in home confinement, Mr. Joseph would live in a different community than the one where he committed the underlying offenses and he would enjoy the full emotional and financial support of his family. Both the fact that he would live in another state and the passage of time (almost forty years) make it unlikely, if not impossible, that he would find himself with the same people with whom he was previously associating. If the instant Motion were granted, Mr. Joseph would live in a suburb of Atlanta with this son and his daughter in law. Mr. Joseph's son, Trevin Joseph, testified that his father would serve the remainder of his sentence in his home, which has been visited and approved twice by United States Probation. Trevin Joseph testified

that he and his wife, an engineer for Lockheed Martin, are willing and able to support Mr. Joseph financially and to ensure that the home adequately satisfies all requirements for home confinement. Trevin Joseph testified that because his wife works remotely, she would also be able to monitor Mr. Joseph closely. In addition, the multiple letters submitted by Mr. Joseph's family reflect that there are other members of the family who are willing to support Mr. Joseph in his transition to home confinement by providing monetary and emotional support. The testimony and the evidence that has now been presented show that Mr. Joseph will have moral and familial support that is significant and bears strongly in favor of a determination that he is unlikely to be a recidivist.

The level of support is not only significant but is corroborated by the testimony of Mr. Tilman, a retired sergeant. In particular, Mr. Tilman testified in support of Trevin Joseph, the son who would be responsible for Mr. Joseph for the remainder of his sentence. Mr. Tilman expressed confidence that Mr. Joseph would be released into a supportive household because he has witnessed the good that Trevin Joseph has done for himself, for his family, and for his community. To be sure, it is highly unusual, if not unheard of, for a member of law enforcement to testify in support of a family seeking compassionate release. Mr. Tilman stated that although he has been asked to testify on behalf of countless defendants in the past, this was the first time he ever agreed to do so. Mr. Tilman's testimony weighs heavily in favor of Mr. Joseph and a finding that his characteristics, specifically the support that he will receive in home confinement, make it unlikely that he would ever present a danger to the community.

Second, Mr. Joseph is unlikely to re-offend or pose a danger to the community given his serious health conditions. The Court now has the benefit of Dr. Kossouf's testimony, which makes clear that Mr. Joseph, at seventy-three, is in very poor health. Indeed, his severe osteoarthritis led to five joint replacements, a number Dr. Kossouf had never seen in her practice. Most

significantly, of course, is Mr. Joseph's pancytopenia, a debilitating blood cell condition. Dr. Kossouf testified that in addition to the fact that the condition is not being attended to as is medically advised, it is a condition which will lead to an aggressive and terminal form of leukemia.[5]

Given the new evidence, the Court finds that the Section 3142(g) and Section 3553(a) factors now weigh in favor of Mr. Joseph's re-designation to home confinement. Although Mr. Joseph's criminal history is significant, the Court is satisfied that Mr. Joseph is highly unlikely to re-offend or pose any danger to the community. He is now a seventy-three-year-old-man with debilitating medical conditions who will be removed from the community in which he offended when he resettles with his son in Georgia. Although the sentencing court stated that Mr. Joseph would not become eligible for parole until he had served at least forty years of his sentence, this fact alone does not make Mr. Joseph ineligible for re-designation to home confinement. Indeed, Mr. Joseph has served thirty-six years of his sentence and is now facing a life-threatening medical condition, which Dr. Kossouf has testified will lead to extremely quick deterioration once it inevitably develops into cancer. Moreover, sufficient limitations will be placed on Mr. Joseph's release because he will be re-designated to home confinement for the remainder of his sentence. Thus, upon considering all the factors, the Court concludes that Mr. Joseph has established

---

[5] It should be noted that the Court briefly addressed Mr. Joseph's BOP disciplinary history at the evidentiary hearing. Specifically, the Court heard argument from his counsel regarding the 2018 incident citing Mr. Joseph for fighting with another inmate in 2018. *See* ECF No. [798-7]. The report is somewhat cursory in that it does not include any information as to whether the incident was violent or whether he was the one responsible for starting the altercation. *See id.* ("Admits fighting [with] another [inmate] a[t] GP Housing Unit denies it happened as reported.") (emphasis omitted). The Government represented that it did not have any additional information on the incident listed. However, as counsel for Mr. Joseph noted, Mr. Joseph's punishment for the 2018 incident was suspended, which suggests that the incident was not serious.

entitlement to compassionate release and re-designation to home confinement. *Rice*, 2020 WL 4333527, at *7 ("Home confinement provides [the defendant] the opportunity to continue his positive behavior in prison and demonstrate that he can make the right choices, on a daily basis, to be a law-abiding citizen.").

## V.  RECOMMENDATION

For the reasons set forth above, it is hereby **RECOMMENDED** that Mr. Joseph's Motion, ECF No. [828], be **GRANTED**.  The District Court should order BOP to immediately re-designate Mr. Joseph to home confinement at his son Trevin Joseph's home for the remainder of his sentence.

## VI.  OBJECTIONS

The Parties will have **FOURTEEN (14) DAYS** calendar days from the date of service of this Report and Recommendation within which to file written objections, if any, for consideration by the United States District Judge.  Any request for an extension of this deadline must be made within seven calendar days from the date of this Report and Recommendation.  Pursuant to Fed. R. Crim. P. 59(b), Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on May 16, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**